IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LASHONDA M. ALFORD | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. _____ |
| JONES LANG LASALLE INC. | § | **JURY DEMANDED** |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE U.S. DISTRICT JUDGE:

COMES NOW, LaShonda M. Alford ("Alford"), Plaintiff, and files her Original Complaint against Jones Lang LaSalle Inc. ("JLL"), and in support of same would show:

**I.**
**Parties, Jurisdiction and Venue**

1.   Plaintiff Alford brings her complaint against JLL pursuant to a Right to Sue letter issued by the EEOC on October 27, 2020 on her charge of discrimination and retaliation and subsequent termination of employment.

2.   Plaintiff is a resident of Fort Worth, Tarrant County, Texas.

3.   Defendant JLL is a global advisor of real estate and investor management services with offices in multiple states including Texas.  JLL is incorporated in multiple states but is doing business in Tarrant County, Fort Worth, Texas.  Defendant JLL may be served with process in this matter by serving its registered agent, United Agent Group Inc., 5444 Westheimer #1000, Houston, Tx. 77056.

4.   This case arises under Title VII, which prohibits discrimination in employment based on race, color, religion, national origin and sex. 42 U.S.C. § 2000e-2.  Federal court jurisdiction exists under federal question jurisdiction, 28 U.S.C. § 1331.

5.      Venue exists in the Northern District of Texas because JLL conducts business in Fort Worth, Tarrant County, Texas, and Defendant resides in this district.

## II.
## Factual Background

6.      Plaintiff Alford was hired by JLL on August 21, 2017 as a senior accountant assigned to JLL's BNSF Railway account in Fort Worth, Texas, working under finance manager Sergio Gonzalez.

7.      Plaintiff Alford is a Black female age 53, with over 23 years' experience in accounting. She never was written up or given negative reviews prior to her complaints to management about discriminatory treatment by her supervisor.

8.      She was the only Black employee in JLL in her position and one of the oldest employees in her department.  Plaintiff Alford historically received favorable reviews and compliments from Sergio Gonzalez regarding her work until she complained to HR about his abusive treatment towards her.  She then received a negative performance review affecting her promotability and a refusal to approve training which were adverse employment decisions impacting Ms. Alford's employment status.  In March 2020, Employee Services contacted Alford about Sergio and Julie Albrecht about the culture and environment at BNSF.

9.      She was treated less favorably than others in that she was assigned a heavier workload and expected to work long hours and to meet changing deadlines established by her supervisor.  She was the only employee in her department without any assistance or back up other than her supervisor.  She was constantly given task duties that no one would be able to complete in a timely manner.

10.     Plaintiff Alford was not given the same opportunity as others for training.

11.     Her supervisor, Sergio Gonzalez, a younger Hispanic male consistently yelled at Plaintiff and spoke to her in a less favorable tone than he did with others in the department.

12.     Beginning in January 2020, Plaintiff Alford was summoned to juror service for the Tarrant County grand jury, which she continued to serve through the pandemic until her service was completed on August 1, 2020.  Sergio stated that he did all the work daily on the days she was on grand jury duty.

13.     Notwithstanding her grand jury service for nearly nine months, Alford was expected to work into the late night to meet deadlines established by Gonzalez.  VPN documentation from BNSF Railway can confirm she logged in and worked up to 2-3:00 a.m. many days in order to get assigned work completed.

14.     Alford filed her initial EEO complaint about discriminatory treatment by Gonzalez based on her race and age on February 26, 2020, with the City of Fort Worth, Human Relations Commission.  Her relationship with Gonzalez continued to deteriorate due to her grand jury service, his unrealistic work expectations and assignments, and her EEO complaint.

15.     In November 2020, Alford made a disability and leave request under the FMLA.  She was informed by the TPA, Lincoln Financial Group, by letter dated November 16, 2020 that if her disability claim was not approved within 30 days, by December 21, 2020, her leave request may still be approved.  She was informed she had 480 hours of unpaid leave under the FMLA for the current 12-month period.

16.     Alford was forced to work overtime by her manager on her vacation days, sick days, and was emailed to come to work while on leave or grand jury duty.  She was denied PTO to take time off to have a surgical procedure done in late November.

17.     Alford applied for continuous FMLA leave. Before the 30-day period to approve her leave request, Alford was advised that her employment was being terminated, effective as of December 15, 2020.  She had 14.79 hours of PTO and was charged 3 days (12 hours) of PTO by Sergio so that her final check only reflected 2.79 hours of PTO.

18.     Alford was presented with a severance agreement which acknowledged she was not given at least two weeks' notice of her separation from JLL.

19.     According to the severance agreement, the termination of Alford's employment was not considered a "retirement" under JLL's benefit plan.  Because of her termination by JLL, any unvested shares of Restricted Stock were forfeited.

20.     This action is being timely filed within 90 days of Alford's right to sue letter issued by the EEOC.

### III.
### Discrimination and Retaliation Claims

20.     Section II of this Complaint is incorporated herein by reference.

21.     Alford was subjected to discriminatory treatment by her supervisor Gonzalez based on her race as the only black employee in the department and her age, being older than Gonzalez.

22.     The discriminatory treatment increased after Gonzalez became aware of Alford's internal complaint to HR and her grand jury service.  Alford believes that Gonzalez was aware of Employee Services reaching out to her about the culture and environment at BNSF Railway.  She was written up for the first time and received a negative performance evaluation despite being required to work long hours into the night to complete assignment deadlines established by Gonzalez, many of which were arbitrary and to which Alford received minimum notice.  When she complained to Gonzalez and HR, the discriminatory and retaliatory treatment of her only intensified.

23. Because of this treatment, Alford sought a continuous disability leave under the FMLA in November 2020.

24. While this requested leave was pending, Alford learned that her employment was being terminated, with forfeiture of unvested shares of restricted stock.

25. Because of JLL's discriminatory and retaliatory treatment of Alford, she lost her salaried position at JLL, along with other benefits.

26. At the time of her termination, Alford was receiving salary of $6140.66 per month, or $73,687.92 annually, employer paid medical, dental and life insurance benefits which terminated on the last day in December 2020, and at least 460 hours of eligible unpaid leave.

27. Alford sues JLL to recover her lost wages and benefits, compensatory damages for mental anguish and emotional distress, together with her attorneys' fees and expenses, expert fees, costs of court, interest and such other and further relief to which she may be justly entitled.

## IV.
## FMLA Interference and Retaliation

28. JLL through Gonzalez interfered with Alford's FMLA leave by asking her to work and use vacation days, sick days and to come into work while out on approved leave.

29. Alford was also denied time off using her accrued PTO when she needed to take time off in late November 2020 for a surgical procedure. Gonzalez texted Alford to help him while she was in pre-op for her scheduled surgery.

30. JLL retaliated against Alford by terminating her employment effective December 15, 2020 after she requested FMLA leave.

31. Alford sues JLL to recover her lost wages and benefits, compensatory damages for mental anguish and emotional distress, together with her attorneys' fees and expenses, expert fees, costs of court, interest and such other and further relief to which she may be justly entitled.

## IV.
## Jury Demand

32. Alford demands trial by jury on her claims against Defendant JLL.

WHEREFORE, PREMISES CONSIDERED, Plaintiff LaShonda Alford prays that JLL be cited to appear and answer herein, and that upon final trial hereof, that she recover judgment against JLL for her lost wages, compensatory damages, punitive damages, together with reasonable attorneys' fees and expenses, expert fees, costs of court, interest and such other and further relief to which she may be justly entitled.

    Respectfully Submitted,

    Clark Firm, PLLC
    5445 La Sierra Drive, #415
    Dallas, Texas 75231
    T: (214) 890-4066
    F: (214) 853-5458
    http://www.dfwlaborlaw.com



    _____
    Steven E. Clark
    sclark@dfwlaborlaw.com
    State Bar No. 04294800

    Matthew J. Altick
    maltick@dfwlaborlaw.com
    State Bar No. 24113528

    *Attorneys for Plaintiff LaShonda Alford*